UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | NO.   3:19-cr-00230 |
| v. | ) | |
| | ) | Chief Judge Crenshaw |
| JOSE FERNANDO ANDRADE-SANCHEZ | ) | |

**UNITED STATES' SENTENCING MEMORANDUM
ADDRESSING TITLE 18, U.S.C., SECTION 3553(a) FACTORS**

The United States, through Donald Q. Cochran, United States Attorney for the Middle District of Tennessee, and Assistant United States Attorney Brent A. Hannafan, in accordance with Local Criminal Rule 32.01(e), hereby provides its statement addressing the sentencing factors set forth in Title 18, U.S.C., Section 3553(a).   This Memorandum identifies and discusses what the United States believes are the relevant factors that may be applicable at sentencing.

Pursuant to this Court's October 29, 2019 Order (DE 19), this case is set for a combined plea and sentencing hearing at 4:30 p.m. on December 11, 2019.   The parties do not have a written plea agreement and there are no agreements between the parties regarding either his plea or sentence.

**A.  Presentence Investigation Report**

As reported in the Presentence Investigation Report ("PSR"), the Probation Officer calculated defendant's final offense level as a level 6 and his Criminal History Category as a Category I.   Those calculations result in a guidelines range of 0 to 6 months' imprisonment, a range of supervised release of 0 to 1 year, a probationary term (if imposed) of 1 to 5 years, and a fine range of $500 to $5,000.   Neither party objects to those calculations.

Defendant has been in custody since his arrest on September 17, 2019.   Therefore, he

will have been in custody almost 3 months as of the date of the sentencing hearing. That amount of time falls within his guidelines range of 0 to 6 months.

### B.  Title 18, U.S.C., Section 3553(a) Factors To Be Considered In Imposing Sentence

Pursuant to Title 18, U.S.C., Section 3553(a), this Court "shall impose a sentence sufficient, but not greater than necessary." Further, this Court, in determining the particular sentence to be imposed, shall consider the seven factors listed below.

### 1.  The nature and circumstances of the offense and the history and characteristics of the defendant.

The relevant facts of the nature and circumstances of the offense are accurately described in Paragraphs 8 and 9 in the Offense Conduct section of the PSR. The offense conduct in this case is that the defendant, an illegal alien, unlawfully entered the United States after having previously been deported, in violation of Title 8, U.S.C., Section 1326(a).

In terms of his relevant personal history and characteristics, the PSR contains few details of his personal life because defendant was not interviewed before the preparation of the expedited PSR. The PSR reports that defendant is a 39 year old citizen of Mexico who first came to the United States in approximately February 1999. (PSR, Identifying information on p. 2, and Para. 8.) Defendant reported to have attended some college and to have been employed in construction. (PSR, Paras. 38-39.) He has a common law wife with whom he has two children, and he lived with them and another daughter of his wife at the time of his arrest. (PSR, Para. 33.) No history of substance abuse or mental health treatment was reported in the PSR. (PSR, Para. 35-36.) The United States is not aware of any additional relevant information regarding defendant's personal life beyond what is in the PSR.

Turning to his criminal and deportation history, defendant was removed from the United

States to Mexico four times prior to his arrest in this case. (PSR, Para. 9.) He was removed from the United States in 2003, 2007, 2009, and 2013. (PSR, Para. 9.) As described in the PSR, three of his four removals – in 2003, 2009, and 2013 – followed criminal convictions in Tennessee during those same years. (PSR, Paras. 9 and 21, 25, and 26.)

As listed in the PSR, defendant has six prior criminal convictions. Those convictions are as follows: 1) Fraudulent Use of a License in 2003; 2) Driving Under the Influence and Criminal Impersonation in 2006; 3) No Driver's License in 2007; 4) Driving Without a License in 2007; 5) Domestic Assault in 2009; and 6) Criminal Impersonation in 2013.

Defendant's most serious criminal conduct resulted in the 2006 convictions for Driving Under the Influence and Criminal Impersonation, the 2009 conviction for Domestic Assault, and the 2013 conviction for Criminal Impersonation. Those are discussed further below. Despite having six convictions, due to either the age of the convictions or the length / types of sentences imposed in state court, they result in only one criminal history point pursuant to the sentencing guidelines and a corresponding Criminal History Category of Category I.

The conduct underlying the 2006 convictions of Driving Under the Influence and Criminal Impersonation occurred in Rutherford County after defendant had been deported in 2003. For those convictions, the affidavits of complaints alleged that defendant was stopped after he drove through a police road block. (PSR, Para. 22.) When he exited his vehicle, he was unsteady on his feet and "had an odor of an intoxicant." *Id.* He then provided a fraudulent identification card in another person's name to the police. *Id.* In addition to being charged with the DUI and Criminal Impersonation, defendant was also charged with Violation of Implied Consent, which was dismissed at sentencing. *Id.*

3

In 2009, after having been deported a second time in 2007, defendant was charged with Domestic Assault and Aggravated Child Abuse in Davidson County. (PSR, Para. 25.) As described in the PSR, the affidavits of complaints alleged defendant assaulted Norma Avina, his then girlfriend (now common law wife). *Id.* She advised an officer that defendant had been drinking for a couple of days before he became violent – punching her in the face several times and knocking her to the ground. *Id.* She claimed she covered her face with her arms but defendant continued to punch her in the face and head. *Id.* While defendant was assaulting Avina, defendant struck Avina's three year-old daughter in the face. *Id.* Both Avina and the child were transported to a hospital emergency room. *Id.* Avina had suffered injuries to her face and arms and it was suspected the child had suffered a broken nose. *Id.* On the Domestic Assault conviction, defendant was sentenced to 11 months, 29 days' custody, suspended on time served of 10 days, and placed on probation for 11 months, 29 days. *Id.* The Aggravated Child Abuse charge was retired. *Id.* Defendant was thereafter removed to Mexico for a third time. (PSR, Para. 9.)

In 2013, defendant had once again returned to the United States and was convicted of Criminal Impersonation in Davidson County. (PSR, Para. 26.) When he was stopped for a traffic violation, defendant was unable to provide a driver's license and falsely identified himself as "Erik Velazquez" to a Metropolitan Nashville Police Officer. *Id.* Defendant pleaded guilty to Criminal Impersonation, an additional charge of No Driver's License was dismissed, and he was sentenced to serve 30 days. *Id.* He was then removed from the United States for a fourth time in October 2013. (PSR, Para. 9.)

At some unknown time following his fourth removal, defendant again illegally re-entered

the United States.  On September 5, 2019, ICE agents located and approached defendant while he was in a parked truck with the engine off in a parking lot in Antioch.  (PSR, Paras. 4-5).  An agent spoke with defendant, identified himself as a federal agent with his ICE credentials, and ordered defendant out of the truck.  *Id.*

Regardless of which description of facts this Court may adopt, there is no dispute between the parties as to the following facts:  After the agent told defendant that he was an ICE agent, instead of getting out of the truck, defendant chose to start the truck and drive forward.  When defendant first started the truck, the agent unholstered his firearm and tried to stop defendant from driving away.  When defendant put the truck into gear and began to drive forward, the agent fired two shots.  The first shot went through the windshield and the second went through the driver's window.  The second shot struck defendant first in the abdomen and then his right arm.  Defendant then fled from the parking lot in the truck.  Less than two weeks later, after he was indicted in this case, Department of Homeland Security agents found and arrested him on September 17, 2019.

> **2.     The need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.**

As demonstrated by the guidelines range of 0 to 6 months, a violation of Section 1326(a) is not one of the more serious offenses this Court sees.  However, defendant's history of criminal conduct, reflected in his repeated violations of federal and state criminal laws,

demonstrates he has no respect for the law. For that reason alone, a sentence of imprisonment is appropriate to afford deterrence both to him and to others who violate federal immigration laws.

Defendant's decision to drive away from the ICE agents in the parking lot after the agent had identified himself as a federal agent and withdrawn his firearm certainly created a dangerous situation, both for the defendant and others. But given the offense of conviction, and the fact that defendant will likely be deported upon completion of his sentence, imposing an above-guidelines sentence seems unnecessary in order to protect the public from further crimes of this defendant. Similarly, it does not appear that such a sentence is warranted to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment.

### 3. The kinds of sentences available.

Although a sentence of imprisonment is not required because the applicable guideline range is in Zone A of the Sentencing Table (PSR at p. 12), defendant has already spent close to three months in pre-trial detention. He will also spend additional time in custody prior to his anticipated removal from the United States. Because he has already spent time in custody, a sentence of imprisonment is appropriate in this case.

### 4. The kinds of sentence and the sentencing range established for the applicable category of offense committed by the applicable category of defendant as set forth in the United States Sentencing Guidelines.

As noted above, the applicable guideline range is 0 to 6 months, which is in Zone A of the Sentencing Table. Based upon defendant's criminal history and repeatedly re-entering the United States, a sentence at least within that range is appropriate for this defendant.

### 5. Any pertinent policy statement issued by the Sentencing Commission.

6

The United States is unaware of any pertinent policy statements concerning the offense in this case.

**6.     The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.**

A guidelines sentence would not create a sentencing disparity with other defendants who have committed similar offenses.   In this District, defendants convicted of violations of Section 1326(a) who have spent an amount of time in pre-trial detention that falls within their guidelines range commonly receive a sentence of time-served.   A sentence at the top of defendant's guidelines range, 6 months, would be appropriate in terms of avoiding unwarranted sentencing disparity.

**7.     The need to provide restitution to any victims of the offense.**

There is no basis for this Court to order restitution in this case.

## Conclusion

Based upon the factors set forth in Section 3553(a), the United States respectfully requests this Court impose a sentence of 6 months' imprisonment.   While defendant did suffer a gun shot and has been detained since shortly he was shot, defendant's history of illegally entering the United States, committing additional crimes while in the United States, and then returning yet again after removal warrants this Court imposing a sentence at the high end of his guidelines range.

The defendant does not have the financial wherewithal to pay a fine and, given his expected deportation, imposing a term of supervised release would be unwarranted.   Therefore, the United States is not requesting this Court impose a fine or term of supervised release.

7

Case 3:19-cr-00230    Document 23    Filed 12/04/19    Page 7 of 8 PageID #: 49

Respectfully submitted,

DONALD Q. COCHRAN
United States Attorney for the
Middle District of Tennessee

By: s/ Brent A. Hannafan
Brent A. Hannafan
Assistant United States Attorney
A-961 U.S. Courthouse
110 Ninth Avenue South
Nashville, Tennessee 37203
Telephone: 615-736-5151

## CERTIFICATE OF SERVICE

I hereby certify that on December 4, 2019, I electronically served one copy of the United States' Sentencing Memorandum with the Clerk of the Court by using the CM/ECF system, which will notify counsel for defendant, and separately sent a copy to the Probation Officer, Terra Everett.

**s/ Brent A. Hannafan**
Brent A. Hannafan
Assistant U.S. Attorney
110th Avenue South, A96l
Nashville, Tennessee 37203
Phone: 615-736-5151

8